# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| GREE, INC., | § | The Honorable Rodney Gilstrap |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:19-cv-00237-JRG-RSP |
| v. | § | 2:19-cv-00310-JRG-RSP |
| | § | 2:19-cv-00311-JRG-RSP |
| SUPERCELL OY, | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| | § | |

# DEFENDANT SUPERCELL OY'S RULE 50(a) MOTION
## FOR JUDGMENT AS A MATTER OF LAW

**age**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD..............................................................................................1

III.    NO REASONABLE JURY COULD FIND DIRECT INFRINGEMENT.........................1

        A.      No Direct Infringement of the '689 Patent ...................................................2

        B.      No Direct Infringement of the '346 Patent ...................................................2

        C.      No Direct Infringement of the '708 and '832 Patents.............................................3

                1.      Clash Royale Does Not Satisfy the Limitations "associating . .
                        . each of a plurality of cells with each of extracted items"
                        ('832 Patent, Claim 1) or "each of a plurality of items … is
                        associated with each of the plurality of cells" ('708 Patent,
                        Claim 1) ......................................................................................3

                2.      Clash Royale Does Not Satisfy the Limitations "receiving . . .
                        a selection request selecting one of the plurality of cells" and
                        "displaying . . . an item associated with the selected cell,
                        which is determined by the server based on the selection
                        request" ('708 Patent, Claim 1) .......................................................4

                3.      Clash Royale Does Not Satisfy the Limitations "sending
                        information for differentiating . . . a display of the one cell
                        from another cell . . . wherein the differentiating of the display
                        of the one cell is done in response to the selection request to
                        select the one cell" ('832 Patent, Claim 1) ......................................5

        D.      No Direct Infringement of the '107 and '439 Patents.............................................6

                1.      Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the
                        Limitation, "Providing game pieces based on skill level
                        information [of the user]" (claims 1 and 6, '107 patent) and/or
                        "Providing game pieces based on the parameter value of the
                        corresponding user" (claims 1 and 5, '439 patent) ...........................7

                2.      Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the
                        Limitation, "storing allocation information indicating which
                        game piece has been provided to which user [with a respective
                        skill level and a number and type of game pieces required to

obtain a game item as a reward]" (claims 1 and 6, '107 patent; claims 1 and 5, '439 patent) ............................................................................8

3. Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "Allocating in a memory, the game item to the first group or at least one of the first plurality of users when it is determined that all the required game pieces have been provided" (claims 1 and 6, '107 patent; claims 1 and 5, '439 patent) ....................................................................................9

4. Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "storing a correspondence between the plurality of users and the one or more groups" (claims 1 and 5, '439) ........................9

5. No Reasonable Juror Could Find that Hay Day Valley Meets the Requirements of Claims 1 and 5 of the '439 Patent ............................9

IV. NO REASONABLE JURY COULD FIND INDIRECT INFRINGEMENT .................10

V. NO REASONABLE JURY COULD FIND WILLFUL INFRINGEMENT....................11

A. No Willful Infringement Can Exist Based on GREE's Arguments and Evidence Relating Solely to the Now Invalidated '594 Patent............................12

B. No Willful Infringement Can Exist Based on GREE's Arguments and Evidence Relating to the 2019 License Agreement ...............................................13

C. GREE Presented No Evidence That Supercell Intentionally on Deliberately Infringed the Asserted Patents ..........................................................14

D. GREE Failed to Present Evidence of Supercell's Pre-Suit Knowledge of the Asserted Patents .............................................................................................14

VI. THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT ........................................................................................................................15

A. Dr. Becker's Alternative or "Business Model" Royalty Rates Are Unreliable.............................................................................................................15

B. Dr. Becker's "Midpoint" Methodology for the Asserted Patents Is Unreliable.............................................................................................................16

C. Dr. Becker Lacks Reliable Opinions Regarding the Value of the Feature Accused of Infringing the '346 Patent ......................................................17

D. The Evidence GREE Presented Regarding Damages Violates Apportionment Principles and the Entire Market Value Rule ...............................18

E.     GREE Presented No Substantial Evidence Supporting a Running Royalty ................................................................................................ 19

VII.   NO REASONABLE JURY COULD FIND THAT THE ASSERTED PATENTS ARE VALID ........................................................................... 19

A.     The Claims of the '689 Patent is Invalid ................................................ 20

B.     The Claims of the '346 Patent is Invalid ................................................ 21

A.     The Claims of the '107 and '439 Patents are Invalid ............................. 22

VIII.  CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Home Assurance Co. v. United Space Alliance*,
　378 F.3d 482 (5th Cir. 2004) ................................................................1

*Bayer HealthCare LLC v. Baxalta Inc.*,
　No. 16-CV-1122-RGA, 2019 WL 330149 (D. Del. Jan. 25, 2019).........................16

*bioMerieux, S.A. v. Hologic, Inc.*,
　No. CV 18-21-LPS, 2020 WL 759546 (D. Del. Feb. 7, 2020) ..............................12

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*,
　911 F.2d 670 (Fed. Cir. 1990) ............................................................10

*Cordis Corp. v. Boston Scientific Corp.*,
　658 F.3d 1347 (Fed. Cir. 2011)............................................................1

*DSU Med. Corp. v. JMS Co.*,
　471 F.3d 1293 (Fed. Cir. 2006)...........................................................11

*E-Pass Techs. v. 3Com Corp.*,
　473 F.3d 1213 (Fed. Cir. 2007)...........................................................10

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
　946 F.3d 1367 (Fed. Cir. 2020)...........................................................11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
　773 F.3d 1201 (Fed. Cir. 2014)...........................................................17

*Gustafson, Inc. v. Intersystems Indus. Products, Inc.*,
　897 F.2d 508 (Fed. Cir. 1990)............................................................12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　136 S. Ct. 1923 (2016)...........................................................11, 12, 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
　234 F. Supp. 3d 601 (D. Del. 2017).......................................................14

*Kaufman v. Microsoft Corp.*,
　2020 WL 364136 (S.D.N.Y. Jan. 22, 2020) ...............................................14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
　694 F.3d 51 (Fed. Cir. 2012)..........................................................17, 18, 19

iv

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

TABLE OF AUTHORITIES
(Continued)

Page

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014)................................................................................10

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997)..............................................................22

*Norian Corp. v. Stryker Corp.*,
   363 F.3d 1321 (Fed. Cir. 2004)..............................................................12

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996).................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018).................................................17, 18, 19

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008)..............................................................21

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   33 F. Supp. 3d 984 (N.D. Ill. 2014) .......................................................16

*Speedfit LLC v. Woodway USA, Inc.*,
   No. 13-CV-1276 (KAM)(AKT), 2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019)...................16

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)..............................................................14

*State Indus. Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 ....................................................................12, 13

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)..............................................15, 16, 17, 19

*Universal Elecs. Inc. v. Roku, Inc.*,
   No. SACV 18-1580-JVS, 2019 WL 1877616 (C.D. Cal. March 5, 2019) .............................14

*Upsher-Smith Lab., Inc. v. PAMLAB, LLC*,
   412 F. 3d 1319 (Fed. Cir. 2005)..............................................................22

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)..............................................................19

*Vita-Mix Corp. v. Basic Holding Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)..............................................................11

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)....................................................................11

*Williams v. Manitowoc Cranes, LLC*,
    898 F.3d 607 (5th Cir. 2018) .......................................................................1

**STATUTES**

35 U.S.C. § 102(a) ..........................................................................................21

35 U.S.C. § 112 ...............................................................................................21

35 U.S.C. § 112(a) ..........................................................................................22

35 U.S.C. § 271(a) ............................................................................................1

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 50(a) .......................................................1, 2

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.      INTRODUCTION

Defendant Supercell Oy respectfully moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law that:  (1) Supercell did not infringe any of the asserted claims,[1] either directly or indirectly, nor could any such alleged infringement be willful; (2) Plaintiff GREE, Inc. failed to adduce evidence to support a damages verdict; and (3) the asserted claims are invalid as anticipated and/or obvious.  Based on the evidence presented at trial, no reasonable juror could find in GREE's favor, and thus Supercell is entitled to judgment as a matter of law.

## II.      LEGAL STANDARD

"Judgment as a matter of law is proper if a party has been fully heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a); *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018).  The Court should grant Supercell's motion unless there is "substantial evidence" in support of each essential element of GREE's claims.  *See Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).  "Substantial evidence requires more than a mere scintilla . . . and [the court] must review the record as a whole, taking into consideration evidence that both justifies and detracts from the jury's decision."  *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

## III.      NO REASONABLE JURY COULD FIND DIRECT INFRINGEMENT

It was GREE's burden at trial to provide substantial evidence that the accused instrumentalities practice every element of the asserted claims.  35 U.S.C. § 271(a).  As set forth

---

[1] The asserted claims are:  claim 3 of U.S. Patent No. 10,328,346 ("the '346 patent"); claim 8 of U.S. Patent No. 10,335,689 ("the '689 patent"); claim 1 of U.S. Patent No. 10,076,708 ("the '708 patent"); claims 2 and 3 of U.S. Patent No. 10,413,832 ("the '832 patent"); claims 1 and 6 of U.S. Patent No. 9,079,107 ("the '107 patent"); and claims 1 and 5 of U.S. Patent No. 9,561,439 ("the '439 patent").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

below, a reasonable jury would not have a legally sufficient evidentiary basis to find that the accused games directly infringe any of the asserted claims.  Fed. R. Civ. P. 50(a)

### A.   No Direct Infringement of the '689 Patent

GREE failed to present evidence sufficient to support a finding of infringement of claim 8 of the '689 patent by Clash of Clans.

Claim 8 of the '689 patent requires that "at least one of the first unit and the second unit, *is decreased to be lower* than the attack strength of the first unit when the first unit and the second unit do not satisfy the first positional relationship."  GREE failed to present sufficient evidence that the accused Baby Dragon's attack strength is decreased based on a positional relationship.  *See* Tr. (May 3, 2021) at 300:14-301:5, 305:13-307:4; Sealed Tr. (May 3, 2021) at 39:3-42:3.  The Baby Dragon's "enrage" feature *increases* its attack strength.  Tr. (May 3, 2021) at 306:9-307:4; 384:11-385:20.  GREE seeks to improperly broaden the scope of the meaning of "is decreased to be lower" to cover all troops that have a variable attack strength based on a positional relationship—i.e., because it can go up, it then can go down.  Also, GREE's expert ignored source code establishing that the attack value for the Baby Dragon is either calculated at its baseline or increased from its baseline, but regardless, is never decreased.  Sealed Tr. (May 3, 2021) at 39:3-42:3; Sealed Tr. (May 5, 2021) (11:11-13:22).

### B.   No Direct Infringement of the '346 Patent

GREE failed to present evidence sufficient to support a finding of infringement of claim 3 of the '346 patent by Clash Royale.

Claim 3 of the '346 patent requires "a data storage function of storing a first panel data that includes a plurality of panels associated with the first user to a storage unit." It further requires that "the data storage function further stores each panel associated with information of motion to the storage unit" and that "the data storage function further stores each panel

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

associated with information of text to be displayed to overlap each panel to the storage unit."

GREE failed to present evidence sufficient to support a finding that Clash Royale satisfies these

limitations. GREE failed to present sufficient evidence of a "data storage function." The source

code Dr. Akl cited was directed to the function of loading information, not storing it. *See* Tr.

(May 3, 2021) at 315:9-320:8; Sealed Tr. (May 3, 2021) at 34:3-37:9. GREE also failed to

identify a single storage unit that stores the required first panel data, each panel associated with

the information of motion, and each panel associated with the information of text to be displayed

to overlap each panel. *See* Tr. at 315:9-18. GREE's expert also incorrectly argued that the

storage unit could be multiple storage units, ignoring that the recited "a storage unit" is singular,

and the later "the storage unit" in claim 1 and claim 3 must be the same storage unit or otherwise

lack the required antecedent basis. *See* Tr. (May 3, 2021) at 316:16 to 317:17; 319-320:8.

### C.     No Direct Infringement of the '708 and '832 Patents

GREE failed to present evidence sufficient to support a finding of infringement of claim

1 of the '708 patent and claims 2 and 3 of the '832 patent by Clash Royale.

> **1.     Clash Royale Does Not Satisfy the Limitations "associating . . . each of a plurality of cells with each of extracted items" ('832 Patent, Claim 1) or "each of a plurality of items … is associated with each of the plurality of cells" ('708 Patent, Claim 1)**

Claim 1 of the '832 patent requires "associating . . . each of a plurality of cells with each

of extracted items," which was construed to mean that "each cell is associated with each item."

Dkt. 84 at 25. Under the Court's reasoning in its claim construction order, the plain and ordinary

meaning of the claim language "each of a plurality of items … is associated with each of the

plurality of cells" in claim 1 of the '708 patent necessarily also requires that each cell is

associated with each item. GREE presented no evidence at trial that any of the accused features

in Clash Royale perform the claimed association of "each of a plurality of cells" with "each item

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

of a plurality of extracted items."  In fact, Dr. Akl testified that "any card," which he identified as the claimed "items" "can be selected randomly and associated *with one of these cells*."  Tr. (May 3, 2021) at 338:15-19.  GREE therefore concedes that the accused features in Clash Royale associate each cell with exactly one item of a plurality of items (here, cards), which plainly falls outside the scope of the claims, and, therefore, GREE has failed to present evidence sufficient to support a finding of infringement of claim 1 and its dependent claims.

> **2.     Clash Royale Does Not Satisfy the Limitations "receiving . . . a selection request selecting one of the plurality of cells" and "displaying . . . an item associated with the selected cell, which is determined by the server based on the selection request" ('708 Patent, Claim 1)**

Claim 1 of the '708 patent requires "displaying . . . an item associated with the selected cell, which is determined by the server based on the selection request."  The Court construed this claim as "displaying, during the virtual game, an item associated with the selected cell, which item is determined for display by the server based on the selection request."  GREE presented no evidence at trial that any of the accused features in Clash Royale perform the claimed displaying of an item that "is determined for display by the server *based on the selection request*."  Dr. Akl wholly ignored this requirement in his testimony at trial.  Instead of identifying any item which is determined for display "by the server" or "based on the selection request," Dr. Akl only identified functions in which an item is shown to a user without any determination of the item based on a selection request.  With respect to the Legendary King's Chest feature,  Dr. Akl testified "When a user taps an item, it's going to send that information to the server, and then the server will display the card.  And we can also see it visually.  *The card that you select will be displayed* in -- and then the other card will go away."  Tr. (May 3, 2021) at 343:21-344:1.  GREE therefore concedes that the server never *determines* a card ("an item") for display "based on the

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

selection request."  Rather, an item is simply displayed, and a user may select it, without any determination by the server based on any selection request.

### 3. Clash Royale Does Not Satisfy the Limitations "sending information for differentiating . . . a display of the one cell from another cell . . . wherein the differentiating of the display of the one cell is done in response to the selection request to select the one cell" ('832 Patent, Claim 1)

Claim 1 of the '832 patent requires "a display of the one cell from another cell of the plurality of cells in the sheet, wherein the differentiating of the display of the one cell is done in response to the selection request to select the one cell."  GREE presented no evidence that the differentiating *of the display of the one cell* is done in response to the selection request to *select the one cell*."  Instead, GREE solely presented evidence that the identified "item" is displayed differently in response to the selection of the item, which is not claimed.  With respect to this claim element, the entirety of Dr. Akl's analysis and testimony is as follows:

> "Q. How is this differentiating step done in Clash Royale?
> A. So when I tap or select a card, the card is going to animate, it's going to display on its own.  So it's going to be differentiated from the other card that is not selected.  And I'm going to -- the server is going to send that information to my phone.
> Q. What is your conclusion, then, on Element [d]?
> A. That the animation, when you select the card, meets the claim language.

Tr. (May 3, 2021) at 351:8-22.  According to Dr. Akl, the "card" is the identified "item" recited in claim 1 of the '832 patent.  *See, e.g.*, *id.* at 337:9 ("[W]e have an acquirable item that's going to be the card.")  The "item" and the "cell" are distinct claim limitations.  Dr. Akl only provides analysis that a selection of an "item" occurs ("tap or select a card") and that selected card is "going to be differentiated from the other card that is not selected." *Id.* at 351:8-22.  He provides no evidence or analysis that the identified "cell," which he identifies as the "location of the cards" but not the card itself. *Id.* at 393:17-22.  In other words, GREE and Dr. Akl have failed to put forward any evidence that any "information for differentiating . . . a display of the one cell from

5

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

another cell" is sent because Dr. Akl only presented evidence that a change in the display of the "item" occurs.  Further, GREE and Dr. Akl failed to put forward any evidence that  any purported "differentiating of the display of the one cell is done in response to the selection request to select the one cell" because the entirety of Dr. Akl's evidence and analysis only discussed the selection and display of an "item" (the card) as opposed to the "cell" ("the location of the card").

Moreover, the claim requires "send[ing] information for differentiating . . . a display of the one cell . . . in response to the selection request."  The claim thus necessarily requires that the server send information in response to the selection request.  In the accused features, the accused "selection request" occurs on the client device, and the differentiation of the display of the "card" identified by Dr. Akl and GREE under its infringement theory occurs on the client device before any transmission of information occurs between the client and server.  Tr. (May 5, 2021) 1073:14-22.  Thus, there is no "information for differentiating . . . a display of the one cell" sent from the server to the client as required by the claims and as would be required under GREE's infringement theory.  Dr. Akl provided no evidence that this limitation is met, instead relying on the conclusory allegation "So it's going to be differentiated from the other card that is not selected.  And I'm going to -- the server is going to send that information to my phone." Tr. (May 3, 2021) 351:16-19.  Dr. Akl then ignores this element in his source code analysis and provides no evidence to support this assertion.  *See, generally*, Tr. (Sealed No. 1 and 2).

### D.    No Direct Infringement of the '107 and '439 Patents

GREE failed to present evidence to support a finding of infringement of claims 1 and 6 of the '107 patent and 1 and 5 of '439 patent by Clash of Clans, Clash Royale, and Hay Day.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1.    **Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "Providing game pieces based on skill level information [of the user]" (claims 1 and 6, '107 patent) and/or "Providing game pieces based on the parameter value of the corresponding user" (claims 1 and 5, '439 patent)**

No reasonable jury could find that this element is met by any of the accused games based on the evidence at trial. First, GREE contends that "points" constitute the claimed "game pieces" in the Clash of Clans, Clash Royale and Hay Days. But Dr. Akl admitted that "a number without an associated visual representation of a game piece"—in other words, points—does not satisfy the limitation. Tr. (May 3, 2021) at 379:9-383:3. Dr. Zagal showed this limitation is not met, and that what Dr. Akl identifies as game pieces are merely points. *E.g.*, Tr. (May 5, 2021) at 922:22-923:19; 923:20-924:22. Further, something that has the mere "functionality" of game pieces, but are not themselves "game pieces," is insufficient to show direct literal infringement, and GREE has not asserted a theory under the doctrine of equivalents. Further, the source code confirms that the "points" in the accused games are merely points, and not game pieces as Dr. Akl contends; nor did Dr. Akl provide any evidence to the contrary. Tr. (May 3, 2021) at 379:9-383:3.

Nor could any reasonable jury find that the accused games provide the alleged game pieces "based on skill level information" or "based on the parameter value for the corresponding user. Dr. Akl pointed to a matchmaking system based on player, building, or troop levels and other barriers to entry (such as requiring a certain level to enter the event or participate in certain tasks within the event), and success in battles against other players as meeting the "based on skill level information" requirement, and Dr. Akl pointed to a player's success in battle (including number of crowns earned during a battle) and progress in completing a task (such as collecting sanctuary animals), as meeting the "based on the parameter value" requirement. None of these arguments meet the claims requirements of providing *game pieces* in a manner that is *based on* skill level information ('107 patent) or on a parameter value of a user ('439 patent). Tr. (May 5, 2021) at

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

931:16-934:11; 934:12-942:9.  Moreover, GREE has failed to provide sufficient evidence that any providing of alleged game pieces is based on "skill level information."  For example, Dr. Akl pointed to "XP level" as constituting the claimed "skill level information," but later admitted that a player's skill level is different from the player's experience level.  Tr. (May 3, 2021) at 364:20-376:21.

> **2.      Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "storing allocation information indicating which game piece has been provided to which user [with a respective skill level and a number and type of game pieces required to obtain a game item as a reward]" (claims 1 and 6, '107 patent; claims 1 and 5, '439 patent)**

No reasonable juror could find that this element is met by any of the accused games based on the evidence at trial.  All asserted claims require that the claimed allocation information is ***stored*** and the asserted claims of the '439 patent further require that what is stored includes the "number and type of game pieces required to obtain a game item as a reward."  GREE failed to show that these elements are met.  Tr. (May 3, 2021) at 253:8-256:19.  GREE offered no testimony regarding the storage of allocation information, as required under the Court's claim construction order, including for Clash Royale Clan Wars 1 (as it relates to troop-specific cards as game pieces) and for Clash of Clans Clan Wars (as it relates to Clan XP as game pieces).  Moreover, Dr. Zagal testified that there is no storing of a number and type of required game pieces in any of the accused games, and that there is no storing of the claimed "allocation information" (i.e., identifying which ***game piece*** is provided to which user).  Tr. (May 5, 2021) at 942:10-944:6; 944:7-945:1.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### 3. Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "Allocating in a memory, the game item to the first group or at least one of the first plurality of users when it is determined that all the required game pieces have been provided" (claims 1 and 6, '107 patent; claims 1 and 5, '439 patent)

No reasonable juror could find that this element is met by any of the accused games based on the evidence at trial. GREE failed to show that there is allocating a game item *when* the required game pieces have been provided. *E.g.*, Tr. (May 3, 2021) at 260:10-261:9. Further, Dr. Zagal showed that this is not present in the games because *when* it is determined that the required game pieces have been provided, there is no allocating of a game item. Tr. (May 5, 2021) at 945:19-948:18. Rather, the allocating of any reward is based on a different condition. *Id.*

### 4. Clash of Clans, Clash Royale, Hay Day Does Not Satisfy the Limitation, "storing a correspondence between the plurality of users and the one or more groups" (claims 1 and 5, '439)

No reasonable juror could find that this element is met by any of the accused games based on the evidence at trial. Dr. Akl merely pointed to "chats between the players in a group." *E.g.*, Tr. (May 3, 2021) at 270:4-13. Such chats are insufficient to meet the claim requirement of correspondence *between* the plurality of users *and the one or more groups*."

### 5. No Reasonable Juror Could Find that Hay Day Valley Meets the Requirements of Claims 1 and 5 of the '439 Patent

No reasonable juror could find that Hay Day Valley infringes based on the evidence at trial. Dr. Akl did not address several elements of the '439 patent with respect to the Valley; instead, for his analysis of those element, he merely referred back to the '107 patent analysis, which did not analyze the Valley, and therefore is insufficient to show the claim elements are met. Tr. (May 3, 2021) at 269:18-270:1; 274:7-13. As one example, Dr. Akl offered no testimony to support that the Valley "determin[es] whether all the required game pieces have been provided to the first *plurality of users*, based on the allocation information." *Id.*; Tr. (May 3, 2021) at

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

275:16-20.  Further, Dr. Zagal testified that there is no determination regarding game pieces "provided to the first plurality of users," as there are no alleged game pieces even provided to a plurality of users.  Tr. (May 5, 2021) 945:2-18.

## IV.    NO REASONABLE JURY COULD FIND INDIRECT INFRINGEMENT

To prove induced or contributory infringement, GREE had the burden to identify at trial *an actual instance* of direct infringement *by another* who Supercell induced to infringe or to whose infringement Supercell contributed.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).  The Federal Circuit requires proof of a *particular* infringing act by a *particular* person, and mere general suggestions that users may play a game on a device a certain way is insufficient to put this issue to the jury.  *E-Pass Techs. v. 3Com Corp.*, 473 F.3d 1213, 1222–23 (Fed. Cir. 2007).

GREE failed to adduce substantial evidence showing the *particular* infringing act by a *particular* person.  Rather, Dr. Akl simply concluded that Supercell indirectly infringes the claims by encouraging, instructing, teaching, and aiding users to directly infringe via commercials, videos, and tutorial provided by Supercell.  Tr. (May 3, 2021) at 215:7-9, 358:8-11, 358:15-18.  This testimony is insufficient.  GREE offered no such evidence other than the conclusory remarks by Dr. Akl.  Additionally, as described above in detail, GREE failed to prove direct infringement on any of the asserted claims.  Without substantial evidence of a specific act of infringement, there is no indirect infringement.

GREE also failed to present substantial evidence that Supercell was aware of any infringement by others.  To prove induced infringement, plaintiff must further show that the defendant "actively and knowingly aid[ed] and abet[ed] another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc*., 911 F.2d 670, 675 (Fed. Cir. 1990).  The "mere knowledge of possible infringement by others does not amount to inducement;

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

specific intent and action to induce infringement must be proven." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003).  Indeed, the specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement" and "the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Similarly, contributory infringement requires that the defendant is aware of the patent and that the component is especially made or adapted for use in an infringing manner.  Dr. Akl's conclusory remarks that Supercell indirectly infringes the claims by encouraging, instructing, teaching, and aiding users to directly infringe via commercials, videos, and tutorial provided by Supercell is not sufficient and does not show Supercell had knowledge of a user's direct infringement.  Tr. (May 3, 2021) at 215:7-9, 358:8-11, 358:15-18.  GREE has provided no evidence or testimony showing that Supercell had the knowledge and intent to encourage another's infringement of the patents at issue.

GREE also failed to present evidence that the alleged infringing products have no substantial infringing use.  *See Vita-Mix Corp. v. Basic Holding Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009) (describing "substantial use").  GREE's failure to present substantial evidence warrants judgment as a matter of law for Supercell on GREE's contributory infringement claims.

## V.    NO REASONABLE JURY COULD FIND WILLFUL INFRINGEMENT

No reasonable jury could find that Supercell had the necessary intent to willfully infringe based on the evidence at trial.  Liability for willful infringement depends exclusively on a defendant's own subjective willfulness with respect to its infringement of a valid patent.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016).  The concept of "willfulness" requires a finding of "deliberate or intentional infringement."  *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo*, 136 S. Ct. at 1933).

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Findings of willful infringement "are generally reserved for egregious cases of culpable behavior." *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring). It "is not established by the simple fact of infringement." *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004).

### A.   No Willful Infringement Can Exist Based on GREE's Arguments and Evidence Relating Solely to the Now Invalidated '594 Patent

GREE's primary basis for its claim of willful infringement is a letter sent by GREE's counsel to Supercell in September 2016. PTX-170. The 2016 letter listed various Japanese patents and one U.S. application for an unrelated U.S. patent. *Id.* Applying the correct legal standard, no reasonable jury could find that this letter supports a claim of willfulness.

First, the 2016 letter does not identify any of the asserted U.S. patents, or any U.S. patent application that issued as an asserted patent in this case. It is axiomatic that a claim of willful patent infringement must be tied to willful infringement *of the asserted patent*. *See State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."); *see also Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). Here, no such evidence exists. Moreover, knowledge of Japanese patents—*i.e.*, the only other patents identified in the 2016 letter—cannot form the basis for willful infringement of U.S. patents. *See bioMerieux, S.A. v. Hologic, Inc.*, No. CV 18-21-LPS, 2020 WL 759546, at *12 (D. Del. Feb. 7, 2020) (knowledge "of the existence of related foreign counterpart patents to the patents-in-suit (and prolonged efforts to invalidate those patents), or of primers that were eventually claimed in the patents-in-suit," failed "to support a finding of willful infringement."). The '346, '689, '708, '832, and '439 patents had not even issued at the time of the letter in 2016, which further precludes any basis for that letter constituting requisite notice of the asserted patents. *State Indus.*, 751 F.2d at 1236.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Second, to the extent GREE contends that foreign applications in the letter relate to three of the asserted patents—the '689, '708, and '832 patents (*see* Tr. (May 3, 2021) at 429:22-430:7, 431:8-432:4)—this assertion fails as notice of a patent *application* does not suffice to show pre-suit knowledge of a patent.  *See State Indus.*, 751 F.2d at 1236.

Third, Supercell challenged the validity of the patent that issued from the only U.S. patent application identified in the 2016 letter.  Supercell prevailed in this challenge, and the asserted claims of that patent have since been held invalid.  Tr. (May 4, 2021) at 775:3-12. *Id.*  Thus, no willful infringement can exist.

**B.**     **No Willful Infringement Can Exist Based on GREE's Arguments and Evidence Relating to the 2019 License Agreement**

No reasonable juror could conclude that the 2019 license agreement between the parties supports a claim of willful infringement.  The parties' resolution of various foreign patent infringement actions has no bearing on whether Supercell's accused games infringe the asserted claims of GREE's U.S. patents in this case.  In fact, the license agreement includes an express provision stating that "neither this Agreement nor payment of the Settlement Payment or other transactions undertaken pursuant thereto, constitutes or shall be construed as an admission of liability by Supercell or GREE or as an admission that either Party engaged in any wrongful, tortious, or unlawful activity, nor shall they be so characterized by either Party."  DTX130 at 9. Willfulness is a subjective standard; the license agreement supports only the conclusion that entering into the license agreement was ***not*** indicative of infringement.

The testimony at trial, including of Greg Harper, Ilkka Paananen, and Markus Aalto, confirms that the license agreement cannot support a finding of willfulness.  *E.g.*, Tr. (May 4, 2021) at 777:14-778:9, (Harper); *id.* at 639:1-640:12 (Paananen).  Accordingly, the license agreement cannot support a finding of willful infringement for any of the patents asserted.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

C.    **GREE Presented No Evidence That Supercell Intentionally on Deliberately Infringed the Asserted Patents**

Irrespective of pre-suit knowledge, GREE adduced no evidence that Supercell had any intent to infringe the asserted patents.  Willful infringement requires that the infringer have a level of intent to cause infringement through his act or believes that infringement will be substantially certain to result because of those acts.  *See Halo*, 136 S. Ct., at 1933.

GREE's only purported evidence of "willfulness" is that Supercell chose to defend the lawsuit rather than discontinue or modify the accused games.  This is insufficient as a matter of law to establish willfulness; if it were enough, every patent infringement suit in which the defendant did not immediately discontinue the accused product would be found willful based on the simple fact of infringement.  Moreover, Supercell developed and released several of the accused features before the asserted patents issued, showing that its choice to enter, pursue, and expand that business had nothing to do with the patents in this case.  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

There was no evidence that, in continuing to sell the accused products, Supercell had any culpable state of mind with respect to the patents.  *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017); *see also Universal Elecs. Inc. v. Roku, Inc.*, No. SACV 18-1580-JVS (ADSx), 2019 WL 1877616, at *14 (C.D. Cal. Mar. 5, 2019).  The Court should enter judgment as a matter of law of no willfulness.

D.    **GREE Failed to Present Evidence of Supercell's Pre-Suit Knowledge of the Asserted Patents**

Supercell is also entitled to judgment as a matter of law of no willfulness because GREE failed to present evidence that Supercell had knowledge of the asserted patents prior to the filing suit.  *See VLSI Tech., v. Intel Corp.*, Civ. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("the complaint itself cannot serve as the basis for a defendant's actionable

14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

knowledge" for a willful infringement claim); *Kaufman v. Microsoft Corp.*, 2020 WL 364136, at *4 (S.D.N.Y. Jan. 22, 2020) (holding that "[p]laintiff's theory [of post-suit knowledge of asserted patents] is without merit"). As explained above, GREE's claim for willful infringement is based on the 2016 letter to Supercell. Tr. (May 4, 2021) at 771:17-24. Aside from that letter—which, as explained above, is insufficient to provide notice—GREE can only allege that Supercell learned of the asserted patents as of the filing date of the complaints, and continued to use the technologies covered by the asserted patents. Therefore, there can be no willful infringement for those patents as a matter of law.

## VI.     THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT

GREE bears the burden of proving the amount of reasonable royalty damages. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *see also Lucent Techs., Inc.*, *v. Gateway, Inc.*, 580 F.3d 1031, 1324 (2009). To carry its burden, GREE must tie the expert testimony to the facts of the case. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). Royalty rates that are "arbitrary" or "unrelated to the facts of the case" are "unreliable" and "irrelevant" as a matter of law. *Id.* at 1315, 1318. Here, GREE and its experts overstated the royalty rate based on an analysis that was unreliable and failed to comport with the governing law. Accordingly, GREE failed to offer sufficient evidence to award reasonable royalty damages.

### A.     Dr. Becker's Alternative or "Business Model" Royalty Rates Are Unreliable

Dr. Becker opined that one way to measure the incremental value of the patented features is using Dr. Neal's survey data, which Dr. Becker suggests shows that the existence of a feature implies a certain "incremental revenue impact." Tr. (May 4, 2021) at 667:2-23, 668:23-669:14, 681:3-682:17 (Becker). Dr. Becker applied this measure to Supercell's total game revenues to determine the "business model" impact of a feature using a logit model. *Id.* at 681:11-15.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

There is no evidence or reliable rationale to support Dr. Becker's conclusion.  Although Dr. Becker multiplied two numbers, likelihood of being a paying user and "importance," neither is meaningfully tied to revenues or time spent playing.

### B.      Dr. Becker's "Midpoint" Methodology for the Asserted Patents Is Unreliable

Dr. Becker also opined on royalty rates using survey data concerning whether users would change their amount of play time if a given feature were removed.  Tr. (May 4, 2021) at 682:18-684:12.  To arrive at his ultimate royalty rate, Dr. Becker stated that his two different measures—the time-spent-playing calculation and the logit calculation—"would meet in the middle at 1.22 percent."  *Id.* at 688:20-689:3.  Dr. Becker concluded that this "midpoint" methodology results in a "reasonable royalty rate" for the asserted patents.  *Id.* at 689:4-6.

Dr. Becker's methodology is unreliable.  His decision to adopt the midpoint lacks any reliable basis, and even includes choosing the midpoint of *negative* values and positive values. *E.g.*, *id.* at 698:8-698:25.  Dr. Becker failed to offer any explanation that would account for the broad discrepancies in his own purported measures of the value of the accused features.  Nor did he provide any basis to support his adoption of the midpoint of these broad ranges in values. Courts have found such opinions arbitrary and unreliable, even where significantly less disparate ranges were at issue.[2]  Accordingly, Dr. Becker's arbitrary testimony regarding his range "meet[ing] in the middle" is unreliable and cannot support a damages award.

---

[2] *See, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276 (KAM)(AKT), 2019 WL 1436306, at *8 (E.D.N.Y. Mar. 29, 2019) (where expert offered possible royalty rates ranging from 4.2% to 20%, excluding expert's choice of 8% figure as "more or less in the middle" as unsupported and unreliable); *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-CV-1122-RGA, 2019 WL 330149, at *7-8 (D. Del. Jan. 25, 2019) (excluding expert's opinion based on the "mid-point of the bargaining range" as unreliable); *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1000 (N.D. Ill. 2014) (excluding expert's testimony based on a midpoint of two estimates as "arbitrary and unreliable," where the expert failed to "provide any economic analysis tied to the relevant facts to support this determination"); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (excluding testimony regarding starting point value that

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### C.   Dr. Becker Lacks Reliable Opinions Regarding the Value of the Feature Accused of Infringing the '346 Patent

For all but the '346 patent, Dr. Becker relied on survey data from Dr. Neal to calculate the value of the accused feature.  For the '346 patent, neither Dr. Neal nor Dr. Becker presented any survey data regarding the accused "panels" aspect of the Clash Royale game.  In place of data relating to the accused feature, Dr. Becker adopted survey data relating to "eight features" that do not embody the '346 patent invention, and then averaged them.  Tr. (May 4, 2021) at 742:2-743:14.

Dr. Becker provided no analysis of why the average of the purported "incremental revenue" attributable to these 8 features—which varies widely, from *negative* 0.08% to 3.92%— can be assumed to be the value of a different feature for which Dr. Becker lacks any survey data at all.  *Id.* at 743:15-744:11.  The only data on which Dr. Becker relied for his reasonable royalty for the '346 patent is data about features that are not covered by that patent.

Testimony regarding the reasonable royalty damages must be "attributable to the infringing features."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018).  Thus, opinions that are untethered from the accused functionality are inadmissible.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Uniloc*, 632 F.3d at 1317.  This is true here, particularly in view of Dr. Neal's testimony that, if one were to run a survey to assess the value of one feature, one would "want to collect survey data" about another feature rather than assuming they have the same value.  Tr. (May 4, 2021) at 591:3-18 ("I, as a survey expert, would not do that.").  And although Dr. Becker claimed to rely

---

was based on an "arbitrary, general rule, unrelated to the facts of th[e] case"); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) ("This complete lack of economic analysis to quantitatively support the one-third apportionment echoes the kind of arbitrariness of the '25% Rule' that we recently and emphatically rejected from damages experts, and would alone justify excluding Mr. Murtha's opinions in the first trial.").

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

on Dr. Akl for comparability of the other features, Dr. Akl's only support for comparability is his assertion that the patents include a "social component," relate to games and servers, and share a Patent Office classification.  Tr. (May 3, 2021) at 224:15-225:4.  The Federal Circuit has long held that "alleging a loose or vague comparability between different technologies or licenses does not suffice."  *LaserDynamics*, 694 F.3d at 79.  Notably, Dr. Akl has testified during a previous trial and in his expert reports that the same notion of comparability applies to other patents, yet Dr. Becker did nothing to address those patents in his calculation.  Dr. Becker's opinions as to the '346 patent are thus unreliable and cannot support a damages award.

> **D.**  **The Evidence GREE Presented Regarding Damages Violates Apportionment Principles and the Entire Market Value Rule**

GREE's evidence—Dr. Becker's testimony and calculations regarding apportionment of damages—fails to support a reasonable royalty award.  Dr. Becker used Supercell's total revenues (*i.e.*, the entire market value) for the accused games as his royalty base when such revenues have no bearing on the accused functionality.  Dr. Becker did so despite testifying that the accused features constitute a handful of hundreds, or even thousands, of other features in the accused games.  Tr. (May 4, 2021) at 711:7-19; *id.* at 712:1-4 ("[I]f literally every single feature in the game was as important as the evidence indicates these are, you would get to a big number pretty quickly.").  Dr. Becker also failed to take into account usage of any of the accused features or accused functionality, including with respect to the asserted method claims.

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). Yet here, contrary to these established principles, Dr. Becker failed to perform any apportionment of Supercell's total revenues *at all*.  Dr. Becker used the entire market value of the accused games as his royalty base.  Dr. Becker then multiplied these revenues by a percentage purporting to

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

represent the value of the accused features.  His opinions fail the requirement of apportionment. *See Power Integrations*, 904 F.3d at 977.  And he offered no opinion establishing that the "[s]trict requirements" of the entire market value rule ("EMVR") are met.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  This is precisely what the Federal Circuit has cautioned against:  allowing patentees to make demands for tens of millions of dollars that, in comparison to total revenues, seem modest or reasonable by comparison, but bear no relation to the value of the accused feature.  *See LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc*, 632 F.3d at 1320 (failure to apportion "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.").  This evidence is unreliable and cannot support a reasonable royalty award.

>    **E.**     **GREE Presented No Substantial Evidence Supporting a Running Royalty**

The only reliable evidence at trial supports a lump-sum royalty.  GREE failed to provide any evidence that either party has ever entered into a license agreement calling for a running royalty or to identify any relevant license that would support its position.  In fact, Dr. Becker testified that he had never seen his own methodology followed in the mobile game industry in the real world.  Tr. (May 4, 2021) at 713:17-714:6, 719:5-20.  By contrast, GREE and Supercell have entered into a lump-sum license agreement that GREE contends covers the same technology at issue here.  *See* DX-130; *see also Lucent*, 590 F.3d at 1330.  Accordingly, no reasonable jury could find that a running royalty is appropriate.

## VII.   NO REASONABLE JURY COULD FIND THAT THE ASSERTED PATENTS ARE VALID

No reasonable jury could conclude that the asserted claims are valid.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### A.     The Claims of the '689 Patent is Invalid

Evidence at trial established that the asserted claims of the '689 patent are anticipated and rendered obvious in light of the publication "Valkyria Chronicles Strategy Guide" by the company BradyGames, which has a copyright date of 2008.  Mr. Friedman testified that "Valkyria Chronicles Strategy Guide" was publicly accessible in 2008 prior to the priority date of the '689 patent in the United States and the publication described the Playstation 3 game Valkyria Chronicles by SEGA .  Tr. (May 5, 2021) at 1093:20-23, 1094:2-15.  GREE presented no substantial evidence showing that the "Valkyria Chronicles Strategy Guide" publication is not valid prior art.

Additionally, the evidence at trial showed that "Valkyria Chronicles Strategy Guide" teaches each and every limitation of the asserted claims.  Tr. (May 5, 2021) at 1093:20-1094:5.  "Valkyria Chronicles Strategy Guide" describes Valkyria Chronicles as a computer game that is played on a computer.  *Id.* at 1095:17-20, 22-25.  "Valkyria Chronicles Strategy Guide" describes that in the game Valkyria Chronicles, there is the deployment of a plurality of units into battle being displayed.  *Id.* at 1095:22-1096:10.  "Valkyria Chronicles Strategy Guide" also discloses that the units are moveable in the field.  *Id.* at 1095:14-20.  "Valkyria Chronicles Strategy Guide" describes that there are first units (i.e., Yoko Martens and Edy Nelson) whose attack strength is decreased to be lower based on satisfying a positional relationship relative to a second unit (i.e., Largo Potter and Rosie Stark).  *Id.* at 1096:25-1098:3, 1098:5-13.  The first unit (i.e., Yoko Martens and Edy Nelson) satisfy the positional relationship by being nearby to the second unit (i.e., Largo Potter and Rosie Stark).  *Id.* at 1098:16-23.  The first unit's attack strength in used to attack an enemy stronghold (i.e., base) and enemy units (i.e., third unit).  *Id.* at 1099:2-11.  The first units (Yoko Martens and Edy Nelson) and third units (enemy troops) are on opposite teams and therefore not in the identical group.  *Id.* at 1099:14-22.  Both the first unit

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

and second unit attack the enemy stronghold. *Id.* at 1100:2-11, 1100:15-24.  Both the first unit

and second unit belong to the identical group (i.e., Squad 7). *Id.* at 1101:14-22, 1101:24-25.

GREE presented no substantial evidence from which a reasonable jury could conclude that

"Valkyria Chronicles Strategy Guide" neither anticipates nor renders obvious the asserted claims

of the '689 patent.

### B.    The Claims of the '346 Patent is Invalid

Claim 3 of the '386 patent is invalid under 35 U.S.C. § 112, because no reasonable jury

could find adequate written description support for the claim.  GREE filed the patent application

that issued as the '346 patent on August 25, 2017 ("the August 2017 application").  GREE claims

priority for the '346 patent through a chain of applications to a Japanese application filed on May

31, 2013 ("the May 2013 application").  There is no dispute that the accused features of Clash

Royale was "in public use, on sale, or otherwise available to the public" before the filing of the

August 2017 application.  35 U.S.C. § 102(a).  GREE's expert testified that Clash Royale has not

changed in any material way with respect to claim 3 of the '346 patent when it launched in early

2016. *See* Tr. (May 3, 2021) at 386:1-387:10.  Supercell's witnesses, including Nicholas Derome,

Seth Allison, and Stacy Friedman, also testified that Clash Royale's accused selection,

deployment, and animation feature has not materially changed since its launch in 2016.

Accordingly, Supercell established its prima facie case of invalidity with respect to claim 3 of the

'346 patent, and it was GREE's burden to come forward with evidence to prove entitlement to

claim priority to an earlier filing date. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299,

1305-06 (Fed. Cir. 2008).

GREE failed to present sufficient evidence so that a reasonable juror could find that the

May 2013 application and each application in the chain of applications to the August 2017

application provided written description support for the claim limitations "stor[ing] each panel

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

associated with information of motion" and "display[ing] . . . one or more moving characters in a game display screen including one or more regions formed by the one or more divisions according to the information of motion associated with each panel."  Those applications share a common specification with the August 2017 application.  However, the '346 patent's priority claim is broken because the only potential support for the above '346 patent claim language is in the specification's Summary of the Invention section added in.  *See* '346 patent, 2:2-7; 2:67-3:5; 3:14-18, 3:36-41; 4:44-49, 4:63-67.  The language "information of motion" and "moving characters" are not found in the earlier applications.  GREE failed to present sufficient evidence that the disclosures in the common specification contain sufficient written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same. . . ."  35 U.S.C. § 112(a); *see also Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997).  In particular, no reasonable jury could find that the disclosures in the common specification identified by GREE, including Figures 3, 4, 5A, 6, 8, 11A, 12, and cols. 8:54-56, 9:52-54, 10:16-17, 10:29-31 provide written description support for the "moving character" and "information of motion" limitation portions of claim 3.

Also, because the new matter added to the specification in the August 2017 application breaks the chain of priority to the earlier patent applications, Clash Royale anticipates claim 3 of the '368 patent because it was publicly available before then.  *Upsher-Smith Lab., Inc. v. PAMLAB, LLC*, 412 F. 3d 1319, 1322 (Fed. Cir 2005) ("a century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.'")

**A.    The Claims of the '107 and '439 Patents are Invalid**

Evidence at trial established that the asserted claims of the '107 and '439 patents are anticipated and rendered obvious in light of Clash of Clans Weekly Master Tournament.  The

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

evidence at trial showed that Clash of Clans Weekly Master Tournament was available in 2012, before the earliest possible priority date of the asserted patents.  Tr. (May 5, 2021) at 871:22-875:1, 909:16-912:17.  Further, the evidence at trial showed that the Clash of Clans Weekly Master Tournament teaches each and every limitation of the asserted claims.  Tr. (May 5, 2021) at 951:17-958:22.

## VIII.   CONCLUSION

Supercell respectfully requests that the Court enter judgment as a matter of law in its favor of no infringement, no reasonable royalty, and that the asserted patents are invalid.

Dated:    April 30, 2021                    Respectfully submitted,

                                         */s/ Michael J. Sacksteder*
                                         Michael J. Sacksteder (Admitted E.D. Texas)
                                         Bryan A. Kohm (Admitted E.D. Texas)
                                         Christopher L. Larson (Admitted E.D. Texas)
                                         Shannon E. Turner (Admitted E.D. Texas)
                                         Winnie Wong (Admitted E.D. Texas)
                                         FENWICK & WEST LLP
                                         555 California Street, 12th Floor
                                         San Francisco, CA 94104
                                         Telephone:    415.875.2300
                                         Facsimile:    415.281.1350
                                         Email:    msacksteder@fenwick.com
                                                   bkohm@fenwick.com
                                                   clarson@fenwick.com
                                                   sturner@fenwick.com
                                                   winnie.wong@fenwick.com

                                         Geoffrey R. Miller
                                         (Texas State Bar No. 24094847)
                                         FENWICK & WEST LLP
                                         902 Broadway, Suite 14
                                         New York, NY 10010
                                         Telephone:    212.430.2600
                                         Email:    gmiller@fenwick.com

                                         Jeffrey Ware (Admitted E.D. Texas)
                                         Jonathan T. McMichael (Admitted E.D. Texas)

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Jessica M. Kaempf (Admitted E.D. Texas)
FENWICK & WEST LLP
1191 Second Ave., 10th Floor
Seattle, WA 98101
Telephone:     206.389.4510
Facsimile:     206.389.4511
Email:          jware@fenwick.com
                jmcmichael@fenwick.com
                jkaempf@fenwick.com

Jennifer R. Bush (Admitted E.D. Texas)
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:     650.988.9500
Facsimile:     650.938-5200
Email:          jbush@fenwick.com

Deron R. Dacus
State Bar No. 00790553
Shannon M. Dacus
State Bar No. 00791004
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: 903.705.1117
Facsimile: 903.581.2543
Email:          ddacus@dacusfirm.com
                sdacus@dacusfirm.com

*Attorneys for Defendant Supercell Oy*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who consented to electronic service are being served with a copy of this document via electronic mail per Local Rule CV-5 on May 6, 2021. Additionally, this document and the attachments thereto were served via email on all counsel of record.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder